## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| SIMMONS BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02818-SHL-tmp |
| | ) | |
| | ) | |
| WESTBRANCH, LLC; NEED SPACE | ) | |
| WESTBRANCH, LLC; NEED SPACE | ) | |
| MANAGEMENT, LLC; and MARION U. | ) | |
| THREATT, Individually, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER GRANTING INJUNCTIVE RELIEF AND APPOINTING RECEIVER

Before the Court is Plaintiff Simmons Banks's Expedited Motion and Incorporated Memorandum of Law Seeking (I) the Appointment of Receiver, (II) Injunctive Relief, (III) to Set Bond, and (IV) to Set Hearing, filed September 17, 2025. (ECF No. 11.) After initially setting a hearing on the matter for September 26, 2025, the case was stayed based on the fact that Defendants Westbranch, LLC, Need Space Westbranch, LLC, and Need Space Management, LLC, each filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Mississippi, on or around September 24, 2025. (ECF No. 17.)

On November 7, the Court lifted the stay after the bankruptcy petitions were dismissed, and set a hearing on the Motion for November 13. (ECF No. 22.) At the Parties' request, that hearing was continued, and reset as a status conference for December 15. (ECF No. 25.)[1] The

---

[1] The request was necessary, according to the Parties, because "Defendant Need Space Westbranch, LLC filed a second Notice of Suggestion of Bankruptcy [Dkt # 23] which stated

status conference was held and the Parties represented to the Court that the issues in the Motion, and the case in general, may soon be resolved.  (See ECF No. 29.)  The Court ordered the Parties to provide an update as to their resolution efforts, and, that, absent a notice of a resolution, Defendants were to file a response to the Motion by January 20, 2026.

The Parties did not file an update with the Court and, on January 20, Defendants Westbranch, LLC, Need Space Westbranch, LLC, and Need Space Management, LLC, filed a response to the Motion characterized as a "Response/Notice of Non-Opposition to Plaintiff's Motion for Appointment of Receiver, Injunctive Relief, to Set Bond, & to Set Hearing."  (ECF No. 30.)  The upshot of the response is that "Defendants do not oppose the appointment of a receiver in this matter."  (Id. at PageID 253.)

For the reasons that follow, and consistent with the terms discussed herein, the Motion is **GRANTED**.

## **BACKGROUND**[2]

This matter involves four loans issued by Plaintiff Simmons Bank, two to Defendant Westbranch, LLC ("Westbranch"), and one each to Defendants Need Space Westbranch, LLC ("NSW"), and Need Space Management, LLC ("NSM").  (ECF No. 1 at PageID 4–8.) Defendant Marion U. Threatt is the sole member of each of the Defendant entities.  (Id. at PageID 2–3.)  Simmons Bank asserts that Defendants are in default on the loans, which collectively had the original principal amount of $6,677,625.  According to Simmons Bank,

---

that on or about November 6, 2025, Defendant Need Space Westbranch, LLC conveyed all of its rights, title, and interests in all of its real estate, accounts, and personal property to Need Space Hacks Cross, LLC," which then filed for Chapter 11 bankruptcy in the Northern District of Mississippi.  (ECF No. 24 at PageID 243.)

[2] The facts herein are taken from Simmons Bank's Verified Complaint.  (ECF No. 11)Defendants assert that "[t]he facts of this matter are essentially as the count set forth in the Plaintiff's Motion to Appoint Receiver."  (ECF No. 30 at PageID 253.)

Defendants have breached the loan agreements' terms, including by failing to make timely or sufficient payments, failure to pay property taxes on the real property that secures two of the loans, and failure to maintain required and sufficient insurance on the real and personal property that secure all of the loans.  (Id. at PageID 2, 7.)

Simmons Bank asserts that Defendants' obligations under the loan agreements have been accelerated, demand has been made, and the outstanding balances remain unpaid.  (Id. at PageID 1–2.)  According to Simmons Bank, the loans "are secured by, among other things, deeds of trust encumbering certain real property located in Desoto County, Mississippi as well as, but not limited to, the equipment, rents, and personal property (eight (8) Ford Econoline vans) owned by [Defendants]."  (Id. at PageID 2.)  Simmons Bank sent a default and demand letter dated June 12, 2025, to Defendants.  (Id. at PageID 7.)  As of the filing of the lawsuit, the loans had an outstanding balance of $6,431,664.39.  (Id. at PageID 2.)

Simmons Bank asserts that Defendants have not been current on their loan payments for more than six months, and continue to divert funds from the income-producing collateral that was used to secure the loans.  (Id. at PageID 7.)  Moreover, Simmons Bank has been forced to pay significant past due taxes on the real property collateral, as Defendants' failure to pay the property taxes made the collateral subject to tax sales.  (Id. at PageID 7–8.)  Simmons Bank contends that, absent the appointment of a receiver, there will be a failure to preserve the real and personal property collateral, "greatly reduc[ing] the value of [its] collateral, result in irreparable harm to [it], and leave [it] without adequate remedy at law."  (ECF No. 11 at PageID 197.)  Simmons Bank "believes that the Defendants are insolvent, thereby making any final judgment under the Complaint generally ineffectual without preservation of the [collateral]."  (Id. at PageID 197–98.)

In its complaint, and again in the Motion now before the Court, Simmons Bank asserts that it is entitled to the appointment of a receiver, as well as the extraordinary relief of a preliminary injunction that would provide the receiver with the means for implementing the purposes of the receivership. To effectuate the receivership, Simmons Bank seeks an order that does the following:

- Appoints MS Manager LLC as Receiver in this matter; and grants the Receiver all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the Real Property Collateral and Personal Property Collateral, including, without limitation, (i) the right to sell the Real Property Collateral and Personal Property Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, et seq., upon the request of Lender and in accordance with terms hereafter approved by Lender and the Court; (ii) the right to hire professionals, on terms approved by Lender, to help the Receiver protect, preserve and liquidate the Real Property Collateral and Personal Property Collateral; and (iii) the right to hire an accountant.

- Orders that the Receiver's compensation be paid monthly in arrears from the revenues generated from the operation and/or liquidation of the Real Property Collateral and Personal Property Collateral in an amount equal to $8,000.00 per month (and prorated for any partial months), plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the Receiver's duties; provided however, the Lender requests that this Court require the Receiver to submit monthly reports to Lender documenting his time and expenses by the twenty-fifth day of each month for the immediately preceding month, during the pendency of the receivership.

- Empowers the Receiver to take all necessary action to operate and manage Real Property Collateral and Personal Property Collateral.

(ECF No. 11 at PageID 202–03.)

## **APPLICABLE LAW**

A preliminary injunction is an extraordinary remedy. Munaf v. Geren, 553 U.S. 674, 659–60 (2008). It should only be granted when the balance of interests weighs in favor of the moving party. Liberty Coins, LLC v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014). There are four factors the Court must balance when determining whether a plaintiff is entitled to a

preliminary injunction: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued; (3) whether the issuance of a preliminary injunction will cause substantial harm to third parties; and (4) whether the public interest would be served by the issuance of a preliminary injunction." G.S. by & through Schwaigert v. Lee, 560 F. Supp. 3d 1113, 1121 (W.D. Tenn. 2021) (citing Sandison v. Mich. High Sch. Athletic Ass'n, 64 F.3d 1026, 1030 (6th Cir. 1995)).  The Court is not required to explicitly consider each of these factors if one is dispositive.  Robinson v. Tansley, No. 2:23-cv-02589-SHL-atc, 2023 WL 6613099, at *2 (W.D. Tenn. Oct. 10, 2023) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).

The district court must "weigh the strength of the four [preliminary injunction] factors against one another," with the qualification that irreparable harm is an "indispensable" requirement, without which there is "no need to grant relief *now* as opposed to at the end of the lawsuit." D.T. v. Sumner Cty. Sch., 942 F.3d 324, 327(6th Cir. 2019) ((citing Friendship Materials, Inc. v. Mich. Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982)).

## ANALYSIS

Here, the preliminary injunction factors weigh in favor of granting the preliminary injunction, which is also evidenced by Defendants' non-opposition to the implementation of the relief Plaintiff requests.  The record demonstrates that Plaintiff has shown a strong likelihood of success on the merits and that Plaintiff has suffered, and would continue to suffer, irreparable harm if the preliminary relief is not issued.  As Defendants acknowledge, "the appointment of a qualified receiver to manage the subject real estate property serves the legitimate interests of all parties to this litigation.  The professional management of the property during the pendency of

this action will help preserve the value of the assets and ensure proper maintenance and operation of the facilities." (ECF No. 30 at PageID 255–56.) There is no suggestion that the issuance of a preliminary injunction would cause substantial harm to third parties. Further, the public interest would be served by the issuance of a preliminary injunction for multiple reasons, including that a receiver is more likely to ensure that the property is preserved and that taxes are paid, and that the underlying contracts that give rise to this dispute are honored. See EOG Res., Inc. v. Lucky Land Mgmt., LLC, 134 F.4th 868, 887 (6th Cir. 2025) ("The public interest is served by enforcing contractual agreements and protecting vested rights[.]") (citing Stryker Emp. Co., LLC v. Abbas, 60 F.4th 372, 386 (6th Cir. 2023)). Similarly, as Defendants explain, "[t]he appointment of a receiver will help ensure that the subject property is properly maintained, operated, and preserved during the pendency of this litigation, thereby protecting the interests of all parties and preventing potential deterioration or loss of value that could occur without professional management oversight." (ECF No. 30 at PageID 256.)

Given the foregoing, as well as the lack of opposition from Defendants,[3] the Motion is **GRANTED**. Accordingly, the Court orders the following:[4]

1. MS Manager, LLC (the "Receiver"), is hereby appointed receiver, subject to further Order of this Court, and granted all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the Real Property Collateral and Personal Property Collateral (as defined at Complaint ¶17),

---

[3] Defendants assert that their "non-opposition shall not be construed as an admission of liability, fault, or wrongdoing on the part of Defendants, nor shall it constitute a waiver of any defenses, counterclaims, or other rights that Defendants may have in this action or any related proceedings." (ECF No. 30 at PageID 255.)

[4] The terms herein are adopted from the proposed order submitted by Simmons Bank, with edits from the Court where necessary.

including, without limitation, (i) the right to sell the Real Property Collateral and Personal

Property Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, et seq., upon the request of

Lender and in accordance with terms hereafter approved by Lender and the Court; (ii) the right to

hire professionals, on terms approved by Lender, to help the Receiver protect, preserve and

liquidate the Real Property Collateral and Personal Property Collateral; and (iii) the right to hire

an accountant.

2.      The Receiver shall serve without bond, provided that the Receiver will well and

truly perform its duties and shall abide by and perform all of the things that it shall be required to

do under this Order.

3.      The Receiver shall have all of the following powers, to be used in the sole

discretion of the Receiver:

a.  To take possession, custody, and control of the Real Property Collateral and Personal

Property Collateral and collect all rents, issues, profits, accounts, receivables, income,

and other rights to payment of any kind (collectively, "Revenues") therefrom;

preserve and maintain the Real Property Collateral and Personal Property Collateral;

and incur the expenses necessary for the preservation and maintenance of the Real

Property Collateral and Personal Property Collateral.  In this Order, Revenues are

intended to be given the broadest scope and to include, without limitation, collected

cash on hand and in bank accounts, and rents, issues, profits, accounts, receivables,

security and advance fee deposits, income, and rights to payment of any kind arising

from or relating in any way to the Real Property Collateral and Personal Property

Collateral.  The Real Property Collateral and Personal Property Collateral and the

Revenue are hereafter referred to as the "Receivership Estate";

b. To hire, employ, pay, and discharge employees, consultants, and managers, agents, and clerical staff as necessary and pay for same at rates and prices that are reasonable under the circumstances now or hereafter existing out of funds that shall come into his possession as Receiver;

c. To purchase materials, supplies, and services and pay for them at ordinary and usual rates and prices (with due regard for any unusual circumstances now or hereafter existing) out of funds that shall come into his possession as Receiver;

d. To open and maintain bank accounts in a federally insured institution. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver in an interest-bearing bank account designated specifically for the benefit of the Receivership Estate, and subject to interests in the proceeds therein asserted by Lender, and nothing herein will prohibit the Receiver from making payments to Lender on account of Lender's secured claims nor preclude Lender from moving the Court to order such relief;

e. To file state and federal tax returns related to the Real Property Collateral and Personal Property Collateral, as necessary. In no event shall the Receiver be obligated to file local, state or federal income tax returns on behalf of any Defendants;

f. To take any and all steps necessary to receive, collect, and review all mail addressed to Defendants Westbranch, LLC ("Westbranch"), Need Space Westbranch, LLC ("NSW"), and Need Space Management, LLC ("NSM") concerning the Real Property Collateral and Personal Property Collateral and to instruct the U.S. Postmaster to forward or release said mail to the Receiver;

g.  To keep the Real Property Collateral and Personal Property Collateral in repair and pay the taxes and assessments for the Real Property Collateral and Personal Property Collateral that accrue during the Receivership, provided there are sufficient funds in the Receivership Estate to do so;

h.  To demand, collect, and receive all Revenues of the Real Property Collateral and Personal Property Collateral, or any part thereof;

i.  To hire, employ, and retain professionals whom the Receiver deems necessary to assist him in the discharge of his duties under this Order and pay same from funds of the Receivership Estate on an interim basis, subject to reporting to the Court and any further approval procedures that the Court may direct;

j.  To take possession and control of all leases, records, correspondence, insurance policies, books, and accounts of Defendants Westbranch, NSW, and NSM, which disclose the business, operation, construction, maintenance, rents, accounts, and profits from the Real Property Collateral and Personal Property Collateral and/or liabilities pertaining to the Real Property Collateral and Personal Property Collateral, whether in the possession and control of Defendants Westbranch, NSW, and NSM or any of their agents or employees; provided, however, that such books and records shall be made available by the Receiver for appropriate use by employees of Defendants Westbranch, NSW, and NSM in the normal course of their duties;

k.  Subject to Court approval, to institute and prosecute all suits as may reasonably be necessary in the judgment of the Receiver to protect the Real Property Collateral and Personal Property Collateral and defend all such suits and actions as may be instituted against him as Receiver;

9

l.  To pay, out of the funds in his possession as Receiver, all expenses of the
Receivership Estate, and the costs and expenses of operations, business, and
maintenance of the Real Property Collateral and Personal Property Collateral,
including all taxes and charges lawfully imposed upon the Real Property Collateral
and Personal Property Collateral;

m.  To take possession of, succeed to, and exercise rights in and under all executory
contracts, union contracts, collective bargaining agreements, expired contracts,
grants, leases, licenses, options or other agreements affecting the Real Property
Collateral and Personal Property Collateral or the assets of the Receivership Estate;

n.  To hold and retain all money which may come into his possession, custody, and
control by virtue of his appointment and is not expended for any other purposes
authorized herein, subject to interests asserted by Lender and until further order of
this Court;

o.  To contract with and employ professional management services, as needed, and
charge any such professional manager with any and all of the operational, financial,
and accounting responsibilities listed above, unless and except to the extent that the
Court otherwise expressly orders; the Receiver shall take care to do so in the most
cost-effective manner reasonably possible;

p.  To use, in the normal course of business, all non-Collateral property of Defendants
Westbranch, NSW, and NSM, if any, to the extent necessary to perform his duties
under this Order without incurring liability or the obligation to compensate
Defendants Westbranch, NSW, and NSM for use of same;

q.  To perform all acts that Receiver determines to be reasonably necessary to preserve, protect, repair, manage, secure, maintain and, ultimately, liquidate the Real Property Collateral and Personal Property Collateral, including, but not limited to, making repairs to the Real Property Collateral and Personal Property Collateral, paying storage, moving, or other similar expenses, and executing contracts providing for the management or maintenance of the Real Property Collateral and Personal Property Collateral;

r.  To advertise, market and/or sell the Real Property Collateral and Personal Property Collateral to third parties individually or in bulk, enter into agreements with agents, dealers, or brokers for the purpose of marketing and/or selling the Real Property Collateral and Personal Property Collateral, execute purchase agreements or contracts providing for the sale of the Real Property Collateral and Personal Property Collateral to third parties, and sign all other documents, certificates of title, assignments, affidavits, and other papers necessary to transfer title to the Real Property Collateral and Personal Property Collateral, provided that all such actions are taken on commercially reasonable terms; and

s.  To insure the Real Property Collateral and Personal Property Collateral and operations through payment of existing business policies or new policies.

4.      The Receiver shall prepare monthly financial reports, as well as monthly statements reflecting the Receiver's fees and administrative costs and expenses incurred for said period in the operation and administration of the Receivership Estate.  After service of the monthly statements upon counsel of record for Lender and Defendants and if no objection is made within ten days, the Receiver is authorized to pay from funds of the Receivership Estate, if

11

any, or from Revenues deposited into the lockbox account described below and advanced by Lender to the Receiver's bank account(s) for payment of the services of the Receiver, his expenses, professionals  and agents, the amount of the Receiver's statement, in an amount equal to $8,000.00 per month (and prorated for any partial months), plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the Receiver's duties, without Court Order. If any fee or cost reimbursement is objected to, the same shall be deferred until resolution by the parties or order by the Court.  All fees and expenses of the Receiver and professionals engaged by him in the course of the Receivership shall constitute a surcharge lien claim on the Real Property Collateral and Personal Property Collateral and proceeds of the Real Property Collateral and Personal Property Collateral until paid in full.

5.    The Receiver shall likewise be permitted to remit monthly payments from proceeds of the Real Property Collateral and Personal Property Collateral to professionals it has hired in accordance with an approved budget with Lender.

6.    Notwithstanding the payment of the fees and administrative expenses of the Receiver and any of its professionals, said fees and expenses shall be submitted to the Court on a quarterly basis, for its approval and confirmation, in the form of either a stipulation by the parties to this action or the Receiver's final account and report.  The Court retains jurisdiction to hear and determine, upon motion properly noticed, any objections to interim payments to the Receiver or its professionals.

7.    The Receiver shall, within sixty days after his qualification hereunder, file in this action an inventory of all personal property of which it shall have taken possession pursuant to this Order, including, but not limited to, all personal property, all related leases or contracts of any kind, and all contracts for sale, options, and insurance policies; and the Receiver shall

promptly file supplemental statements of whatever property is subsequently received by the
Receivership Estate.

8.     In addition to all of the powers hereinabove set forth, the Receiver is hereby

vested with the general powers of receivers in cases of this kind, subject to the direction of the

Court, and the Receiver shall, from time to time, or when directed by this Court, render to this

Court reports of the proceedings and accountings with respect to the acts and things done by him

and all monies received and expended by him or his agents.

9.     If the Revenues are insufficient to pay the ordinary, necessary, and reasonable

costs and expenses of the management, operation and/or construction of the Real Property

Collateral and Personal Property Collateral as described herein, Lender may, in its sole and

absolute discretion, but without an obligation to do so, advance to the Receiver sufficient funds

to pay such ordinary, necessary and reasonable costs and expenses as Lender may elect to have

paid (hereinafter the "Receivership Advances").  Any Receivership Advances made by Lender

shall be protective advances of principal under the Loan Documents (as defined in the

Complaint), and shall be secured by personal property liens and security interests encumbering

the Real Property Collateral and Personal Property Collateral with the same priority as Lender's

existing liens and security interests encumbering the Real Property Collateral and Personal

Property Collateral.  If it is ever determined that Lender's existing liens and security interests are

not in first-priority secured positions, the Receivership Advances made pursuant to this Order

shall nevertheless be secured by first-priority liens and security interests encumbering the Real

Property Collateral and Personal Property Collateral and enforceable pursuant to the remedies

provided by the Loan Documents.  The Receiver shall be, and hereby is, authorized and directed

to issue Receivership Certificate(s) to Lender, at Lender's request, reflecting the amount and

13

priority of the Receivership Advances and to cause such Receivership Certificates to be filed in the appropriate public records.

10.     The Receiver and the respective parties to this action may apply to this Court at any time for further or other instructions and for further powers necessary to enable the Receiver to perform his duties.  Further, in the event that the Receiver desires to resign, the Receiver shall be entitled to do so by an application to this Court heard after twenty days' prior notice to the other parties to this action; provided that the Receiver shall continue to perform his duties until, and shall cooperate fully in, the transition to a successor to whom all provisions of this Order regarding the "Receiver" then shall apply.  Similarly, in the event that Lender desires to have a replacement receiver appointed and applies to the Court for such relief, the Receiver shall consent to and shall cooperate with such request by Lender and transition to a successor in the same manner as provided above with respect to resignation by the Receiver.  The Court also shall retain jurisdiction to act in more exigent circumstances (such as, without limitation, death or incapacity of the Receiver).

11.     Defendants shall notify the Receiver upon or before the Receiver's taking possession of the Real Property Collateral and Personal Property Collateral of all present insurance coverages on or related to the Real Property Collateral and Personal Property Collateral and provide to the Receiver copies of all insurance policies.  If insurance does exist, the Receiver shall be named as an additional insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the Real Property Collateral and Personal Property Collateral.

12.     Defendants, their agents, employees, attorneys, representatives, successors, and assigns, and all other persons and entities who are acting in concert or participating with them shall:

a.   Relinquish and turn over possession of the Real Property Collateral and Personal Property Collateral and all Revenues to the Receiver upon its appointment becoming effective;

b.   Turn over to the Receiver and direct all officers, directors, property managers, and other third parties in possession thereof, to turn over all keys, leases, licenses, permits, software, books, records, books of account,  ledgers,  operating statements, budgets, real estate tax bills, business plans, strategic plans, third-party contracts, insurance policies, and all other business records relating to the Real Property Collateral and Personal Property Collateral, wherever located, and in whatever form maintained, including information contained on computers or servers, any and all software relating thereto, and all computer passwords, including administrator passwords, vendor contacts, and agreements for all key financial and operational computer systems, as well as all banking records, names and addresses of banks at which the Defendants may have accounts, statements, ledgers, accounts receivable records, cancelled checks, cash on hand, impound accounts, petty cash and deposits, security deposits and any other Revenues of any kind;

c.   Turn over to the Receiver all documents that pertain to all licenses, permits, or governmental approvals relating to the Real Property Collateral and Personal Property Collateral and immediately provide the Receiver each Federal Taxpayer Identification

Number used in connection with the Real Property Collateral and Personal Property

Collateral;

d.   Account to the Receiver for all monies that are Revenues of the Real Property

Collateral and Personal Property Collateral; and

e.   Surrender to the Receiver all Revenues of the Real Property Collateral and Personal

Property Collateral in the possession, custody, or control of Defendants (or anyone

acting on behalf of Defendants), and all records, books of account, ledgers, and other

documents pertaining to the operation, construction, maintenance, and/or proceeds of

the Real Property Collateral and Personal Property Collateral.

13.    Defendants, their agents, employees, attorneys, representatives, successors, and

assigns, and all other persons and entities who are acting in concert or participating with them,

shall refrain, and are hereby prohibited from, engaging in or performing, directly or indirectly,

any of the following:

a.   Retaining possession of the Real Property Collateral and Personal Property Collateral

or any of the Revenues;

b.   Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging,

mortgaging, creating a security interest in, encumbering, concealing, or in any

manner whatsoever dealing with or disposing of the whole or any part of the Real

Property Collateral and Personal Property Collateral or the Revenues, without first

having obtained the written consent of  the Receiver and Lender;

c.   Demanding, collecting, receiving, expending, disposing, assigning, secreting, or in

any other way diverting, using, or making unavailable to the Receiver the Real

Property Collateral and Personal Property Collateral or the Revenues;

d.  Doing any act which will or may, impair, defeat, divert, prevent, or prejudice the preservation of the Real Property Collateral and Personal Property Collateral or the Revenues;

e.  Committing any waste of the Real Property Collateral and Personal Property Collateral or any part thereof, or committing any acts thereon in violation of the law;

f.  Removing, transferring, encumbering, or otherwise disposing of the Real Property Collateral and Personal Property Collateral;

g.  Physically interfering in any manner with the Real Property Collateral and Personal Property Collateral and the Revenues or the Receiver's possession thereof, or with any persons acting on behalf of the Receiver in the discharge of the Receiver's duties, including, but not limited to, exercising or attempting to exercise any control or management in connection with the Real Property Collateral and Personal Property Collateral or the Revenues, or otherwise engaging in acts inconsistent with the Receiver's authority to operate, manage, and control any and all assets of the Receivership Estate;

h.  Withholding from the Receiver or destroying any property, information, books, or records that the Receiver may request pursuant to this Order; or

i.  Filing, or causing to be filed any petition on behalf of Defendants Westbranch, NSW, and NSM for relief under the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.*, without prior permission from this Court.

14.    The Court will retain jurisdiction to expand or limit the Receiver's powers and duties, or to grant other relief, upon separate application of the Receiver, Lender, or any other party to this action.

15.     The Receiver shall have no obligation to defend any pending or future litigation against Defendants, nor any obligation to expend any funds of the Receivership Estate to respond to any discovery propounded on Defendants.  Furthermore, none of the Real Property Collateral and Personal Property Collateral or Revenue herein turned over to the Receiver or made part of the Receivership Estate in accordance with this Order shall be interfered with in any manner by third parties, including those asserting that they are unsecured creditors of Defendants.

16.     Nothing in this Order shall subject the Receiver to personal liability for acting as the receiver herein or for any obligations of the Receivership Estate; and the Receiver shall be and hereby is excused and exculpated by the Court from any such personal liability, unless based upon willful and malicious conduct of the Receiver.  The Receiver and the Receiver's attorneys, accountants, employees, agents, servants, appraisers, auctioneers, brokers, and any other independent contractors and technical specialists, acting within the scope of such agency are entitled to rely upon all outstanding rules of law and Orders of this Court and shall not be liable for good faith compliance with any order, rule, law, judgment or decree.  In no event shall the Receiver or his attorneys, accountants, agents, employees, servants, appraisers, auctioneers, brokers or other independent contractors and technical specialists be liable to anyone, other than the Receiver, for their actions or omissions except upon an express finding by this Court that they acted as the result of malfeasance, gross negligence, or in reckless disregard of their duties. Further, even though Lender has requested that the Court appoint the Receiver, the Receiver is an officer of the Court and is not subject in any way to Lender's direction or control. Accordingly, Lender shall not have any liability whatsoever for the appointment of the Receiver or any act or omission of the Receiver (or anyone acting or failing to act on behalf of the

Receiver), nor any liability for any unpaid obligations or expenses, if any, of the Receivership Estate.

17.    Should the Receiver seek to sell any or all of the Real Property Collateral and Personal Property Collateral pursuant to 28 U.S.C. § 2001, *et seq*. (a "Receiver Sale"), the Receiver shall comply with 28 U.S.C. §§ 2001, 2002, and 2004, as applicable.

18.    In the event the Real Property Collateral and Personal Property Collateral is sold by way of a Receiver Sale, unless otherwise ordered by this Court, all proceeds of such sale, after expenses incurred in connection therewith, shall be transferred to Lender to be held in escrow, with any liens against the Real Property Collateral and Personal Property Collateral attaching to such proceeds in the same order of priority to which they attached to the Real Property Collateral and Personal Property Collateral itself prior to such sale or transfer.  Such proceeds shall not be used or distributed by Lender until adjudication of the priority, extent, and amount of such liens by this Court in this action.

19.    At any time hereafter, the Receiver and/or Lender may seek, by motion and notice, an order establishing a final date for the filing of any claim against the Defendants or the Real Property Collateral and Personal Property Collateral (the "Bar Date") and for establishing the procedure for (i) the Receiver to identify those parties with claims against the Defendants or the Real Property Collateral and Personal Property Collateral, (ii) providing notice of such bar date, (iii) claimants to establish their claims, and (iv) adjudicating any objectionable or competing claims to the Collateral.

20.    In the event the Real Property Collateral or Personal Property Collateral is transferred prior to setting the Bar Date, and Lender has established its entitlement to all proceeds of the Real Property Collateral and Personal Property Collateral, then, in such event,

the Court shall direct the Receiver to notify all holders of claims that no distribution shall be made on account of their claims, and all such creditors shall not make any further claims against the Real Property Collateral and Personal Property Collateral.  Upon entry of such Order determining the entitlement to the proceeds of the Real Property Collateral and Personal Property Collateral and of this receivership, the receivership shall be dismissed upon disbursement of such proceeds to the party or parties adjudged entitled to such proceeds.  In the event this receivership is dismissed without the disposition of the Real Property Collateral and Personal Property Collateral, creditors may resort to any remedies they had prior to the receivership being filed.

21.    Notwithstanding anything else herein, any claim asserted, or any judgment entered, herein for monetary damages against the Defendants shall survive dismissal of the receivership.  Further, Lender's rights to exercise any and all other rights, remedies or obligations provided under the Loan Documents are hereby preserved.  Specifically, and without limiting the preceding sentence, the Court hereby authorizes Lender to sell all or part of the Real Property Collateral and Personal Property Collateral as necessary and in its sole discretion in accordance with the Loan Documents, including, but not limited to, by way of foreclosure, sale or lease.

22.    Nothing contained in this Order, nor the grant or exercise of any powers provided herein by the Receiver, shall cause the Receiver or Lender to be considered a past or present owner, operator or other potentially responsible or liable party pursuant to any provision of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*; or incur any liability based on ownership or operation of the Receivership Estate pursuant to any other statutory, regulatory, common law or strict liability theory. Furthermore, to the extent hazardous substances, wastes or constituents are known or discovered

to be present upon or under any real property interests of Defendants which constitute part of the

Real Property Collateral and Personal Property Collateral, or any other Receivership assets, the

Receiver shall not be considered to be in any direct or indirect contractual relationship with any

party responsible for such substances, wastes or constituents pursuant to CERCLA, and shall be

considered to be acting solely in a  "fiduciary capacity" with respect to Receivership Estate,

pursuant to 42 U.S.C. § 107(a) of CERCLA.

23.    Nothing contained in this Order requires the Receiver to take over any plan

sponsor obligations of Defendants, to the extent that any Defendant sponsors or maintains an

employee benefit plan; however, the Receiver may elect to initiate termination of any ERISA

plan as of the date and time the Receiver determines it is in the best interest of the Receivership

Estate to do so and the Receiver is granted full authority to hire or retain third party

administrators, custodians or other service providers for the purpose of accomplishing such a

termination of a ERISA plan, if one exists.

24.    Lender shall forthwith provide a copy of this Order, as entered by the Court, to

counsel for the Defendants, if any, via facsimile, email and/or by first-class mail to the addresses

set forth below.  The Receiver or Lender shall forthwith provide a copy of this Order via first-

class mail to the applicable taxing authorities and any persons in possession of the Real Property

Collateral and Personal Property Collateral, or otherwise affected by this Order.  Upon service of

this Order upon any person or entity, or any employee or agent of such person or entity, such

person shall be deemed to be required to comply with all of the terms of this Order from the

moment of service upon such person, entity, agent or employee until the Court shall have

relieved such person from the terms of this Order by subsequent order.  "Service" shall constitute

oral or written notice in any form (including by facsimile) to the office of any person to be bound thereby.

25.    Except as otherwise provided herein, this receivership action and the preliminary injunction shall continue until further Order of this Court.

**IT IS SO ORDERED**, this 9th day of February, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE